Zygmunt ZIEBA and Lucy Zieba,
Plaintiffs,

v.

MIDDLESEX MUTUAL ASSURANCE
COMPANY, Defendant.

Civ. A. No. B–81–286.

United States District Court,
D. Connecticut.

Nov. 2, 1982.

Alan Neigher, Byelas & Neigher, Westport, Conn., for plaintiffs.

John E. Tener, Robinson, Robinson & Cole, Hartford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ZAMPANO, District Judge.

In this diversity action the plaintiffs, who were insured under a policy issued by defendant, seek to recover damages for destruction of their property by fire in their Florida condominium. Defendant, Middlesex Mutual Assurance Company ("Middlesex"), moves for summary judgment. Fed. R.Civ.P. 56.

### I. FACTS

The basic facts are not in dispute. In Connecticut on December 28, 1978, plaintiffs, Zygmunt and Lucy Zieba, purchased a homeowner's insurance policy from Middlesex, effective for one year, insuring property in their home or any new principal residence against loss from certain perils including fire. On July 31, 1979, the plaintiffs took title to a condominium in Fort Lauderdale, Florida, and moved many of their possessions into their new home on that date. In the early hours of the next day, while the plaintiffs were away, fire destroyed the condominium and its contents. Investigation by police revealed that the cause of the fire was arson.

The policy in question required that the insureds give "immediate" notice of a loss to the insurer, furnish the insurer with a proof of loss "within sixty days after the loss," and commence a suit on the policy "within twelve months next after inception of the loss."

The plaintiffs orally notified their insurance agent of their property loss on August 10, 1979. He, in turn, reported the loss to Middlesex three days later. The following week, the plaintiffs retained a private adjusting company to assist them in their claim against Middlesex. On August 20th, a Middlesex investigator contacted the plaintiffs and they referred him to their private adjuster. By letter dated August 28th, the investigator for the insurance company requested that a schedule of contents form be executed and that an interview be arranged. The letter contained a non-waiver provision and, in addition, the plaintiff's signed a non-waiver agreement. A month later, Mr. Zieba gave the insurer a short statement under oath. On October 2nd, the plaintiffs were reminded in writing that certain documents including the schedule of contents had not been received by the insurer. On October 28th, the plaintiffs were again requested to file the schedule of contents and other documents with respect to the fire loss. Apparently, on or about November 19th, the plaintiffs submitted a "list" of property destroyed. In December, a rather detailed document was received by the insurer which the plaintiffs assumed was an adequate proof of loss. On January 18, 1980, Mr. Zieba was questioned at length under oath by the insurer's representative concerning the claim.

On January 25, 1980, the insurer sent a certified letter to plaintiffs informing them that the purported proof of loss was being returned and that the company was "expressly rejecting it as a proper proof of loss since it does not comply with the policy provisions." The explanations given were that 1) the proof of loss was not timely filed and 2) the document was defective because it did not "set out the actual cash value" of the property. In addition, the plaintiffs were notified that the company reserved all its rights and defenses under the policy.

There is no indication in the pleadings, the exhibits, or in the comprehensive briefs addressed to defendant's motion that the parties had any further contact with each other until November 20, 1980, when the plaintiffs instituted an action against Middlesex in the State of Florida. The suit was dismissed for lack of jurisdiction. The instant action was commenced in this District on June 25, 1981, and the requested relief is grounded on breach of contract, a violation of the implied covenant of good faith and fair dealing, common law deceit, and breach of fiduciary duties.

## II. ISSUES

Defendant contends there is no genuine issue of material fact and that as a matter of law judgment should enter in its favor. Specifically, it asserts that the plaintiffs did not give due notice of loss, failed to file a timely proof of loss, and did not commence suit within the time limits set forth in the policy.

Plaintiffs argue that the defendant must demonstrate prejudice before the plaintiffs' delays can bar this action, that the question of waiver and estoppel effectively proscribes the grant of summary judgment, that Connecticut's six year statute of limitations pertaining to written contracts governs their claim, and that even if the breach of contract count is dismissed, the remaining causes of action in tort survive.

It is agreed that Connecticut law controls the resolution of these issues. See *Klaxon v. Stentor Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Guardian Life Ins. Co. v. Robitaille*, 495 F.2d 890, 894 n. 7 (2 Cir.1974); *Jenkins v. Indemnity Ins. Co.*, 152 Conn. 249, 253, 205 A.2d 780, 782–83 (1964).

## III. NOTICE AND PROOF OF LOSS

It is uncontroverted that the plaintiffs submitted neither the notice of loss "immediately" nor the proof of loss within sixty days after loss. Defendant contends these provisions in the policy are conditions precedent to the contract of insurance, the violations of which void coverage even in the absence of prejudice. Plaintiffs argue that they "substantially" complied with the requirements contained in the policy and that prejudice must be demonstrated by defendant in order for delays to be valid defenses to liability.

The notice and proof of loss provisions in a policy, which usually can readily be complied with by an insured, are necessary conditions for the protection of the insurance company. An insurer must have a reasonable opportunity to investigate, to assess the scope of the loss, to estimate its rights and liabilities, and to prevent fraud and collusion. *Arton v. Liberty Mut. Ins. Co.*, 163 Conn. 127, 132, 302 A.2d 284, 288 (1972); *Chauser v. Niagara Fire Ins. Co.*, 123 Conn. 413, 423, 196 A. 137, 141 (1937); *Rochon v. Preferred Accident Ins. Co.*, 118 Conn. 190, 197, 171 A. 429, 432 (1934).

On the other hand, Connecticut courts have recognized the need to shelter an insured from the harsh consequences of a rigid allegiance to the time provisions in a policy. Justice mandates that an insurer should not escape a liability it has expressly undertaken on overly technical grounds. To balance the competing interests of the insurer and the insured, Connecticut courts have fashioned a series of exemptions from the strict application of the "condition precedent" principles of contract law in late notice situations. In addition to the doctrines of waiver and estoppel, see, e.g., *Curran v. Connecticut Indem. Co.*, 127 Conn. 692, 695, 20 A.2d 87, 89 (1941), terms such as "immediate notice" are construed to mean and require that reasonable notice be given under the circumstances. *West Haven v. United States Fidelity & Guar. Co.*, 174 Conn. 392, 397, 389 A.2d 741, 745 (1978); *Baker v. Metropolitan Casualty Ins. Co.*, 118 Conn. 147, 149, 171 A. 7, 9 (1934). Moreover, immaterial or unsubstantial failures to comply with notice stipulations do not constitute a fatal breach. *Curran*, 127 Conn. at 696, 20 A.2d at 89.

Some states grant an insured increased protection against a strict contractual interpretation of notice provisions by requiring

the insurer to prove that prejudice resulted from an insured's technical failures. See, e.g., *Northwestern Title Sec. Co. v. Flack,* 6 Cal.App.3d 134, 141, 85 Cal.Rptr. 693, 696–97 (Ct.App.1970); *Henderson v. Hawkeye-Security Ins. Co.,* 252 Iowa 97, 106 N.W.2d 86 (1960); *Cooper v. Government Employees Ins. Co.,* 51 N.J. 86, 90, 237 A.2d 870, 874 (1968).

Connecticut ostensibly has rejected the "prejudice" approach in notice cases. *Employers' Liability Assurance Corp. v. Travelers Ins. Co.,* 411 F.2d 862, 866 (2 Cir.1969) (under Connecticut law, an insured's failure to comply with the notice provisions "voids coverage, even in the absence of prejudice"). See also *Preferred Accident Ins. Co. v. Costellano,* 148 F.2d 761, 762 (2 Cir.1945); *Lee v. Casualty Co.,* 90 Conn. 202, 205, 96 A. 952, 953–54 (1916). Nevertheless, it is important to note that Connecticut judges have employed the "test" of prejudice to determine whether a notice delay is immaterial and unsubstantial. See, e.g., *Arton,* 163 Conn. at 133–34, 302 A.2d at 288; *Curran,* 127 Conn. at 696, 20 A.2d at 89. Indeed, in a recent case, a Connecticut Superior Court judge ruled that an insurer must show prejudice from a late notice to be relieved of liability. On appeal, the Connecticut Supreme Court, reversing on other grounds, did not reach the issue. However, two justices in dissent stressed that no sound reason, in logic or equity, exists for the Connecticut rule and urged that this state follow the "clear trend of the law" and adopt the prejudice requirement. *Plasticrete Corp. v. American Policyholders Ins. Co.,* —— Conn. ——, 439 A.2d 968 (Sup.Ct. 1981).

■ Applying these principles to the facts of the case *sub judice,* the Court is of the opinion that a triable factual question is present concerning the notice of loss issue. The plaintiffs, absent a separate bar to the action, are entitled to prove that they gave notice of the fire to Middlesex within a reasonable time under the circumstances. With respect to the delayed submission of the proof of loss, there is no doubt that Middlesex neither waived the timely filing nor is estopped by any behavior on its part from this defense. However, it has not accepted the burden of demonstrating prejudice at this stage of the proceedings. In excess of caution, in view of Connecticut's developing law on the requirement of prejudice in late notice cases, the Court will deny defendant's motion for summary judgment to the extent that motion is based on the plaintiffs' failure to submit a timely proof of loss.

## IV. LIMITATION OF ACTION

The plaintiffs instituted suit on the policy more than a year after the fire loss. Therefore, on its face, the lapse of time bars this action.

■ However, plaintiffs argue that in the absence of prejudice, the defendant should not be excused from liability due to the delay. The argument is rejected. A failure to abide by the limitation of action condition in a policy stands on a much different footing than a non-compliance with the notice provisions. As previously explained, the main purpose underlying the notice stipulations is to safeguard the insurer from prejudice in processing a claim. Therefore, where an insurer's interests have not been harmed by a late notice, the reason for the notice condition is lacking. By contrast, limitation periods on suits are designed to promote justice by preventing surprises through revival of stale claims, to protect defendants and courts from handling matters in which the search for truth may be impaired by loss of evidence, to encourage plaintiffs to use reasonable and proper diligence in enforcing their rights, and to prevent fraud. *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979); *Order of R.R. Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944); *Brandywine One Hundred Corp. v. Hartford Fire Ins. Co.,* 405 F.Supp. 147, 151 (D.Del.1975). The presence or absence of prejudice is not, nor should it be, a factor in deciding whether an insurer may effectively assert this defense under the policy.

**1322**

■ The plaintiffs next allege that the one-year limitations period is unfair and equity requires that Connecticut's six-year statute of limitations on contracts should control. The contention merits little discussion. The insurance provision requiring suit to be brought within one year of a loss is required by statute, Conn.Gen.Stat. § 38–98, –99 [1] and is a valid contractual obligation. *Monteiro v. American Home Assurance Co.,* 177 Conn. 281, 283, 416 A.2d 1189, 1190 (1979).

■ The plaintiffs further claim that the insurer's conduct operated as a waiver by the company of, or as an estoppel to assert, the time limitation defense. To constitute waiver there must be an "intentional relinquishment of a known right." *National Transp. Co. v. Toquet,* 123 Conn. 468, 475, 196 A. 344 (1937). Here, there is no evidence in the record to indicate that Middlesex, expressly or impliedly, waived any of its rights under the policy. On the contrary, the moving papers reveal numerous non-waiver notices to the plaintiffs as well as a non-waiver agreement signed by the plaintiffs. Even assuming that Middlesex somehow waived the timely filing of the proof of loss by deposing Mr. Zieba in early January 1980, the plaintiffs had more than sufficient time within which to commence suit. *Pini v. Allstate Ins. Co.,* 499 F.Supp. 1003, 1005 (E.D.Pa.1980). No basis exists to conclude that the insurer after that date did anything to lead the plaintiffs into believing that it intended to enlarge the limitation period in the contract of insurance. *Whitehead v. Lumbermans Mut. Casualty Co.,* 543 F.Supp. 967, 970 (N.D.Ga.1982); *Redington v. Hartford Accident & Indem. Co.,* 463 F.Supp. 83, 86 (S.D.N.Y.1978); *Gardner-Denver Co. v. Dic-Underhill Constr. Co.,* 416 F.Supp. 934, 937–38 (S.D.N.Y.1976).

With respect to estoppel, the sole ground advanced by plaintiffs in support of their position is that the letter from Middlesex on January 25, 1980, failed to contain an express disclaimer of liability. Therefore, it is argued, the plaintiffs were lulled into the belief that the claim was being processed for payment within the near future.

■ This contention is unpersuasive as a matter of law. The estoppel doctrine contains two criteria: "one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief; and the other party, influenced thereby, must change his position or do some act to his injury which he would otherwise not have done." *Dickau v. Glastonbury,* 156 Conn. 437, 441, 242 A.2d 777, 780 (1968). See also *Spear-Newman, Inc. v. Modern Floors Corp.,* 149 Conn. 88, 91, 175 A.2d 565, 567 (1961). Additionally, a party relying on estoppel must demonstrate that due diligence was exercised to know the truth, that the truth was not known, and that the party lacked reasonable means to ascertain the truth. *Novella v. Hartford Accident & Indem. Co.,* 163 Conn. 552, 565, 316 A.2d 394, 402 (1972).

■ No element of estoppel is present in the record of this case. Middlesex repeatedly alerted plaintiffs to the necessity of filing an adequate proof of loss. There is simply no evidence that the plaintiffs' failure to comply with this prerequisite was due to any deception or misleading declarations on defendant's part. The communication on January 25, 1980, set forth an unequivocal rejection of the proof of loss, and more than sufficiently put plaintiffs on notice that their claim was being rejected. The defendant's silence thereafter, and the plaintiffs' inaction in neither submitting a proper proof of loss nor instituting suit until almost ten months after the receipt of

---

1. Section 38–98 provides in relevant part: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss." Section 38–99(a) in turn, provides in part: "No policy or contract of fire insurance shall be made, issued or delivered by any insurer or any agent or representative thereof, on any property in this state, unless it conforms ... to all provisions, stipulations, agreements and conditions with the form of policy set forth in section 38–98."

the letter, conclusively establish that the January letter was regarded by both parties as a disclaimer of liability. In this regard, it is significant to note that the plaintiffs, by affidavit or otherwise, neither assert that they were unaware of the obligation to file a timely suit, nor attempt to explain their lack of attention to the claim until long after it was time barred. Under these circumstances, there is no factual or legal support for a finding of estoppel against the defendant. See, e.g., *Dittler Bros., Inc. v. Allendale Mut. Ins. Co.*, 509 F.Supp. 514, 517 (N.D.Ga.1981); *Redington*, 463 F.Supp. at 86–7; *Brandywine One Hundred Corp.*, 405 F.Supp. at 152–53; *Sheet Metal & Roofing Contractors Ass'n v. Liskany*, 369 F.Supp. 662, 668 (S.D.Ohio 1974); *Guiliano v. Covenant Ins. Co.*, Conn.L.Tribune, Oct. 27, 1980, at 13, col. 4 (Super.Ct. Aug. 13, 1980).[2]

Finally, plaintiffs contend that Connecticut's three-year statute of limitations for torts, Conn.Gen.Stat. § 52–577, governs their causes of action based on breach of good faith and fair dealing, deceit, and breach of fiduciary duty. Even assuming the viability of these theories for recovery here, see, e.g., *Michaels v. Hartford Accident and Indem. Co.*, Conn.L.Tribune, Sept. 22, 1980, at 15, col. 1 (Super.Ct. Aug. 26, 1980), it is obvious the alleged tortious conduct of the insurer arises out of its obligations under the provisions of the policy. Thus, an insurer that violates its contractual duty to make payments to an insured is also vulnerable to the imposition of additional damages for its tortious handling of the claim. These are merely two different consequences which may flow from a violation of the same duty imposed upon the insurer by contract. Therefore, the limitation period for suit as set forth in the policy controls. See *Escambia Treating Co. v. Aetna Casualty & Sur. Co.*, 421 F.Supp.

1367, 1369–71 (N.D.Fla.1976); *McDowell v. Union Mut. Life Ins. Co.*, 404 F.Supp. 136, 146–47 (C.D.Cal.1975).

In any event, these causes of action cannot withstand defendant's motion for summary judgment. In order to defeat the motion, the plaintiffs "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See also *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2 Cir.1980). Mere conclusory allegations are insufficient. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2 Cir.1978). In order to prevail on their tort theories, the plaintiffs would have to establish bad faith, fraud, deceit and misrepresentation on the part of Middlesex. As pointed out previously, no facts have been submitted by the plaintiffs which would reasonably support such findings by a trier. In these circumstances, Connecticut law mandates judgment for defendant. See *Cindeb Corp. v. Covenant Ins. Co.*, Conn.L.Tribune, Feb. 16, 1981, at 16, col. 1 (Super.Ct. Jan. 23, 1981); *Krupa v. Kelley*, 5 Conn.Cir.Ct. 127, 245 A.2d 886 (Cir.Ct. App.1968). See also *Sigler v. Mutual Benefit Life Ins. Co.*, 506 F.Supp. 542, 545 (S.D. Iowa), aff'd, 662 F.2d 1087 (4 Cir.1981), cert. denied, —— U.S. ——, 102 S.Ct. 1464, 71 L.Ed.2d 672 (1982); *Escambia*, 421 F.Supp. at 371.

Accordingly, the defendant's motion for summary judgment is granted.

---

**2.** The plaintiffs' heavy reliance on *Vanacore v. Worcester Mut. Ins. Co.*, Conn.L.Tribune, Nov. 30, 1981, at 9, col. 4 (Super.Ct. June 29, 1981) is misplaced. In that case, the plaintiff relied on a "policy" and "informational memorandum" from the insurer which failed to set forth the one year limitation period. The court held that

a material question of fact was present on the issue of estoppel, which barred summary judgment. In the instant case, however, there is no claim made by the plaintiffs that the policy did not contain the limitation period provision or that they were unaware of it.