**PACIFIC INDEMNITY COMPANY,**
**Plaintiff,**

v.

**Donald GOLDEN, Defendant.**

**Civ. No. B–89–388 (WWE).**

United States District Court,
D. Connecticut.

Dec. 30, 1991.

Franklin D. Tell, Alfred C. Polidore, Tell, Cheser & Breitbart, New York City, for plaintiff, Pacific Indem.

Dennis D'Antonio, Weg & Myers, P.C., New York City, for defendant Donald Golden.

## RULING ON MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION TO STRIKE

EGINTON, District Judge.

### FACTS

Plaintiff Pacific Indemnity Corporation ["Pacific"] moves for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Defendant Donald Golden ["Golden"] moves to strike Pacific's material misrepresentation claim. Motion papers reveal the following facts:

Golden was the owner of a house at 12 Stallion Trails in Greenwich, Connecticut [the "premises"] which was covered by a Masterpiece Insurance Policy number 10231998–01 [the "policy"] issued by Pacific. The policy covered loss or damage to the premises for the period 4/11/85 to 4/11/89, and stated at page Y–1:

> We [Pacific] do not provide coverage if you [Golden] or any covered person has intentionally concealed or misrepresented any material facts relating to this policy before or after a loss.

On December 2, 1988, the premises were severely damaged by fire. The Greenwich Fire Marshall's report indicated that the fire was incendiary, having probably been set by using gasoline as an accelerant. In the wake of the fire two thirty-two gallon garbage containers filled with gasoline were discovered on the premises. The containers were found at the opposite end of the premises from where the fire started, and were ostensibly not involved in the fire. When Golden was questioned by the fire department at the scene he claimed the gasoline was for use in snowmobiles by Golden and his neighbor, John Napoli ["Napoli"].

In furtherance of Pacific's investigation into the case and origin of the fire, Pacific's national Manager of Special Claims Investigations, Beverly Ascolese ["Ascolese"] conducted a taped unsworn interview of Golden on December 12, 1988. At the interview, Golden stated that the containers had been placed at the premises with Golden's consent by workmen employed by Napoli some nine months prior to the fire, and Golden repeated the assertion that the gasoline was for use by Golden and Napoli in snowmobiles.

Subsequent to the interview, Pacific investigated Golden's assertions concerning the containers and gasoline, and contacted a number of people who had been at the premises during the nine months prior to the fire. No person who had visited the premises could verify the presence of the containers during this period.

As part of the continuing investigation, Pacific conducted an examination under

oath of Golden on January 26, 1989 and March 17, 1989. At the examination conducted March 17, 1989 Golden stated that his earlier assertions concerning the containers to the Greenwich Fire Marshall and to Ascolese in his interview had been inaccurate, and that in reality he had brought the containers to the premises in November, 1988, for the purpose of throwing the gasoline therein on Napoli's lawn. The professed motivation behind this action was that Napoli had defrauded Golden in several business deals, and Golden was seeking revenge.

Pacific then demanded that Golden file a sworn proof of loss, which Golden filed on May 10, 1989. Thereafter, Pacific denied Golden's claim on the grounds of concealment and material misrepresentation. However, Citicorp Mortgage, Inc. ["Citicorp"] held a first and second mortgage on the premises, and Pacific paid Citicorp $1,710,255.99 under the policy.

Pacific filed suit against Golden on July 13, 1989, seeking a declaratory judgment that Pacific has no liability to Golden under the policy, and seeking judgment against Golden for the amount of all monies paid to Citicorp under the policy. For the following reasons, Pacific's motion for summary judgment on the issue of liability will be granted, and Golden's motion to strike will be denied.

## DISCUSSION

As an initial matter, Defendant Golden, in his papers responding to Pacific's summary judgment motion, moves to dismiss or strike Pacific's material misrepresentation claim. While it is unclear upon which rule of procedure Golden bases his motion, the Court will construe it as a motion to strike pursuant to Fed.R.Civ.P. 12(f). The asserted grounds for such motion—waiver, estoppel, and lack of materiality—are discussed below in the context of Pacific's motion for summary judgment. As the Court finds that waiver or estoppel arguments are inappropriate here, and that the false statements by Golden were material, the motion to strike will be denied.

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

■ It is well settled both under Connecticut law and under the law of the Second Circuit that false material statements made by an insured to his insurer in the course of a claim investigation may render the underlying insurance policy void. *See Fine v. Bellefonte Underwriters Insurance Co.*, 725 F.2d 179, 184 (2nd Cir.1984); Conn.Gen.Stat. § 38–98 (1991).

Golden makes assertions in his papers which the Court will accept as true for the purposes of deciding the summary judgment motion. The Court will assume that the gasoline in the containers really had nothing to do with the fire, that the Fire Marshall initially believed gasoline was used to fuel the fire but had subsequent doubts, and that Golden wanted to make his false statements known and set the record straight at the March 17th examination.

One assertion by Golden will not be accepted as true by the Court. Golden asserts in his motion papers that Pacific told him at his interview that he would be provided with a transcript of the interview before his examination under oath, but that such transcript was not provided until the examination session of March 17, 1989. This assertion is refuted by a letter from Golden's attorney dated February 16, 1989 which shows that Golden was provided with transcripts of his interview at least a

month before Golden admitted on March 17th that he had made false statements.

The remaining facts germane to the cross motions are not in dispute. Golden has admitted that he made false statements to Pacific during Pacific's investigation. Golden advances five arguments why, despite his false statements, his policy should not be voided: lack of materiality, lack of intent to defraud, retraction, waiver, and estoppel. Each argument will be discussed in turn.

## 1. MATERIALITY

Under the terms of the policy, and under the relevant insurance law, Pacific must demonstrate that Golden's false statements were material. The Second Circuit has held that "the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." *Fine v. Bellefonte Underwriters Insurance Co.*, 725 F.2d 179, 183 (2nd Cir. 1984).

In *Fine*, the insured's building burned when the sprinkler system froze. The insured falsely stated to the insurer during an examination under oath that a heat timer controlling the system was set at 40 degrees when in fact the timer was set at 25 degrees. The trial court found the statement not to be material, because it determined that the system would have frozen and the building would have burned whether the timer was set at 25 or 40 degrees.

The Second Circuit reversed, and determined the statement to be material, because it held the

> materiality of false statements is not determined by whether or not the false answers deal with a subject later determined to be unimportant because the fire and loss were caused by other factors than those with which the statements dealt. False sworn answers are material if they might have affected the attitude and action of the insurer.

*Fine*, 725 F.2d at 184.

■ Golden notes that his false statements were not provided to Pacific in the context of an examination under oath, but rather a more informal taped interview. Yet Golden provides no authority that such a distinction should have any bearing on the issue at hand. Indeed, when false statements are made in an investigation the key is the materiality of the statement, not whether the statement was made under oath. *See American Diver's Supply and Mfg. Corp. v. Boltz*, 482 F.2d 795, 798 (10th Cir.1973).

■ Golden further argues that his statements cannot be material because the containers were not involved in the fire, and in any event whether he used the gasoline for his snowmobiles or for destroying Napoli's landscaping was irrelevant to the fire investigation. This logic flies in the face of *Fine*. If the premises were destroyed by flood, then the existence of gasoline on the premises would truly be immaterial. Yet when a home is destroyed by fire, and the Fire Marshall initially suspects gasoline was used to fuel the fire, then any statements regarding the origin of gasoline found on the premises must be material to an insurer's investigation.

Drawing all inferences in Golden's favor, the Court finds that Pacific has met its burden of demonstrating that Golden's false statements were material misrepresentations.

## 2. INTENT TO DEFRAUD

For a material misrepresentation clause to have effect, the misrepresentation must have arisen from an intent to defraud on the part of the insured. *See Chaachou v. American Cent. Ins. Co.*, 241 F.2d 889, 893 (5th Cir.1957). Golden argues that although he did intentionally make false statements in the interview, such statements were made to avoid embarrassment and possible legal action arising from his true intended use of the gasoline, and were not made to defraud Pacific.

■ A court in some instances may presume an intent to defraud as a natural consequence of an insured's false statements. *See Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 96–97, 3 S.Ct. 507,

515–16, 28 L.Ed. 76 (1884). In *Claflin,* an insured made false statements to his insurer during a fire investigation regarding the insured's interest in stock damaged by the fire. The insured subsequently retracted his statements, claiming that he had never intended to defraud the insurer and rather had been concerned with protecting his standing with a creditor. The *Claflin* Court examined the circumstances of the false statements and presumed that the insured intended to defraud his insurer.

Golden notes that the misrepresentation in *Claflin,* pertaining to the ownership of damaged goods, was more closely connected to the insurance claim than the statements in the instant case, where the containers had nothing to do with the fire. Golden is in effect claiming that his statements are not material. This Court has already found them to be material, and *Claflin* ties the presumption of intent to materiality:

> No one can be permitted to say in respect to his own statements upon a material matter, that he did not expect to be believed; and if they are knowingly false and wilfully made, *the fact that they are material is proof of an attempted fraud,* because their materiality, in the eye of the law, consists in their tendency to influence the conduct of the party who has an interest in them ...

*Claflin,* 110 U.S. at 95, 3 S.Ct. at 515 (emphasis added). Assuming that Golden was primarily concerned with avoiding embarrassment when he made his false statements, an intent to defraud can still be presumed, because, to quote from *Claflin:*

> it does not detract from [intent to defraud] to suppose that the purpose of [Golden] in making these false statements was not to deceive and defraud [Pacific] ... but for the purpose of preventing an exposure of the false statement previously made ... it is no palliation of the fraud that [Golden] did not mean thereby to prejudice [Pacific], but merely to promote [Golden's] own personal interest in a matter not involved in the contract with [Pacific].

*Claflin,* 110 U.S. at 96–97, 3 S.Ct. at 516.

The Court finds that, considering all material facts in Golden's favor, the requisite intent to defraud Pacific can be presumed from Golden's false statements at the interview.

### 3. RETRACTION

Golden argues that, even assuming he made a material misrepresentation at the interview, his retraction of his statements at the subsequent examination extinguished any misrepresentation prior to Pacific's denial of his claim. Golden cites no insurance case law to support this proposition, but instead makes an analogy to a case arising under a federal perjury statute in which recantation of a perjurious statement was held to bar prosecution when the false statement had not substantially affected the proceeding. *See United States v. Fornaro,* 894 F.2d 508, 511 (2nd Cir. 1990) (per curiam).

Golden argues that since *Fornaro* stands for the proposition that an individual can recent a false statement made under oath without penalty, an insured should not be penalized for making a false unsworn statement. This argument ignores two points.

First, as noted above, the key inquiry regarding false statements made in an insurance investigation is not whether such statements are sworn but whether they are material. *See American Diver's Supply and Mfg. Corp. v. Boltz,* 482 F.2d 795, 798 (10th Cir.1973). Second, Pacific correctly notes that the *Fornaro* case involved a federal perjury statute that specifically provided the recantation defense. Whether Congress can legislate a defense from criminal prosecution and whether an insured can enforce a private insurance contract are two separate matters, and therefore the *Fornaro* case is inapposite.

Golden also argues that to ignore his interpretation of *Fornaro* would create a rule that once an insured makes a false statement, the statement is effectively unretractable because the insured has no incentive to correct the record. This argument has some logic, but also ignores two points. The purpose of a material misrep-

resentation clause such as the one at issue is presumably to keep an insured from making false statements in the first place and misleading an insurance investigation. In the instant case, even though Golden retracted his false statement, the retraction occurred some three months after the interview. In the interim, Pacific was misled for a considerable period of time during which it devoted resources to verifying Golden's initial assertions concerning the containers.

Moreover, accepting Golden's argument would, to quote from a case on which Golden relies, encourage an insured "to lie in the first place, and then to recant only when confronted with the threat of exposure...." *Fornaro*, 894 F.2d at 511. Such a result would be intolerable for insurers, and has been rejected by the case law. *See Chaachou v. American Cent. Ins. Co.*, 241 F.2d 889, 892 (5th Cir.1957). Under Golden's analysis a claimant could make a false statement to his insured, sit back and see how the investigation was proceeding, and then recant with impunity if his lie were in danger of being exposed. The Court rejects such an absurd reading of the law.

### 4. WAIVER

Golden raised the affirmative defense of waiver in his amended answer. Pacific learned on March 17, 1989, that Golden had made a false statement regarding the gasoline. Pacific continued to investigate the claim for three months before denying liability, and in the process demanded a sworn proof of loss from Golden. Golden argues that by continuing the investigation with knowledge of Golden's alleged violation of the policy, Pacific waived the alleged misrepresentation under Connecticut law and should be estopped here from asserting it.

■ It is difficult to establish waiver by an insurance company under Connecticut law. Connecticut law expressly provides that for a waiver of an insurer's rights under a policy to be valid, the waiver must be made expressly in the policy or in a written amendment to the policy. *See* Conn.Gen.Stat. § 38–98 (1991). Golden has produced no such written waiver.

Connecticut case law, as previously interpreted by this court, requires that for a waiver by an insurer to be effective there must be an intentional relinquishment of a known right. *See Zieba v. Middlesex Mut. Assurance Co.*, 549 F.Supp. 1318, 1322 (D.Conn.1982). *See also National Transp. Co. v. Toquet*, 123 Conn. 468, 475, 196 A. 344 (1937). In *Zieba* the court found that an insurance company had not waived its right to assert a time limitation defense when the company had sent non-waiver notices to the insured. Pacific did the same in the instant case during the winter of 1989 through correspondences with Golden's attorney and at the examination.

■ To accept Golden's waiver argument would place insurance companies in the untenable position of having to deny a claim immediately when faced with a false statement or risk waiver. This Court has rejected such an argument, and instead recognized the practical reality that an insurer must have the reasonable opportunity to investigate and assess the scope of a loss. *See Zieba*, 549 F.Supp. at 1320; *see also Arton v. Liberty Mut. Ins. Co.*, 163 Conn. 127, 132, 302 A.2d 284 (1972).

In addition, the insistence by Pacific that Golden file a proof of loss while Pacific was aware of the false statements does not constitute a waiver, because the only way Golden could make Pacific liable under the policy was to file such proof of loss. Once such proof of loss was filed, Pacific had 60 days under Connecticut law to accept or deny the claim. *See* Conn.Gen.Stat. § 38–98 (1990). Here, Pacific's denial on June 30, 1989 was within 60 days of Golden's filing the proof of loss on May 10, 1989. Drawing all inferences in Golden's favor, it cannot be said Pacific waived its right to deny his claim.

### 5. ESTOPPEL

■ It is difficult to discern from the motion papers on precisely what grounds Golden seeks to estop Pacific from denying his claim. The estoppel doctrine under Connecticut law has two criteria:

[O]ne party must do or say something which is intended or calculated to induce

another to believe in the existence of certain facts and to act on that belief; and the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done.

*Dickau v. Glastonbury*, 156 Conn. 437, 441, 242 A.2d 777 (1968). In addition, the party relying on estoppel "must demonstrate that due diligence was exercised to know the truth, that the truth was not known, and that the party lacked reasonable means to ascertain the truth." *Zieba v. Middlesex Mut. Assurance Co.*, 549 F.Supp. 1318, 1322 (D.Conn.1982) (citing *Novella v. Hartford Accident and Indem. Co.*, 163 Conn. 552, 565, 316 A.2d 394 (1972)).

In the instant case there is no indication that Pacific did anything intending to induce Golden to believe that his claim was going to be accepted. Moreover, the only change in Golden's position which can be gleaned from the record is his admission in the examination session of March 17th that he had made a false statement in his earlier interview. The Court cannot imagine how such a change in position could be based on a belief that Pacific was going to accept his claim. When Golden made such an admission, he had not even filed his claim, as evinced by his proof of loss, with Pacific.

If anything, it can be assumed that Golden made his admission in the examination session of March 17th to correct the record because he feared that otherwise Pacific would deny his claim, which assumption flies in the face of an estoppel defense. Drawing all inferences in Golden's favor, the Court finds no grounds for the estoppel defense.

## CONCLUSIONS

For the reasons set forth above, Plaintiff Pacific Indemnity Company's motion for summary judgment is GRANTED, and Defendant Donald Golden's motion to strike is DENIED.

SO ORDERED.