Edward N. ONYON and Bonnie J. Onyon, husband and wife, Plaintiffs,

v.

TRUCK INSURANCE EXCHANGE, a California corporation, d/b/a Farmers Insurance Group of Companies, Defendant.

No. C93–1816D.

United States District Court, W.D. Washington.

Aug. 9, 1994.

Gregory L. Kosanke, Smith & Kosanke, Lynden, WA, for plaintiffs.

Kevin M. Cummings, Clarke, Bovington & Cole, Seattle, WA, for defendant.

### AMENDED ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DIMMICK, District Judge.

THIS MATTER comes before the Court on defendant's motion for summary judgment. The Court, having considered the motion, memoranda, and affidavits submitted by the parties, hereby grants the motion.

### I

Plaintiffs Edward and Bonnie Onyon (the "Onyons") own and operate the Thrifty Market and Deli in Blaine Washington. On January 20, 1993, a retaining wall on the property on which the Thrifty Market is located collapsed. This collapse damaged the parking lot and the foundation of the building in which the Market is located.

The Onyons reported the loss to their insurance company, Truck Insurance Exchange ("TIE"), on January 21, 1993. On January 27 as a part of TIE's investigation, TIE representative Scott Waddell took a recorded statement from Mr. Onyon. In that statement, Mr. Onyon neglected to tell Waddell that one of the Onyons' employees told Mr. Onyon that he (the employee) had seen a front end loader run into the retaining wall

several weeks before the retaining wall failed. TIE hired a consultant to determine the cause of the failure of the retaining wall. The consultant determined that the cold weather had caused water to freeze, trapping water from the subsequent rain, which caused the wall to fail. On this basis, TIE rejected the Onyons' claim as excluded from coverage under the policy.

After he received the letter denying coverage, Onyon contacted TIE to complain and gave a second recorded statement. In this statement, Onyon stated that his employee had seen a front end loader run into the retaining wall on January 5, 1993. Onyon admitted that he had this information when he made his initial statement but that he omitted it on the advice of his then counsel. In response to this second statement, TIE hired a new expert, who conducted a second investigation. The second expert concluded that the failure of the wall was caused by seismic activity occurring in Blaine since World War I (the original building predated that war). Accordingly, TIE denied coverage as excluded under the terms of the policy.

The Onyons then brought this suit in Whatcom County Superior Court, alleging breach of contract, wrongful denial of coverage, breach of covenant of good faith, and a violation of the Consumer Protection Act. TIE removed the action to this Court on the basis of diversity jurisdiction. TIE now moves for summary judgment, contending (1) that misrepresentation voids the policy, (2) that the damage to the retaining wall is excluded from coverage under the terms of the policy, and (3) that all proximate causes of the Onyons' losses are excluded under the terms of the policy.

## II

■ Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of establishing that it is entitled to summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party meets its burden under Rule 56(c), the burden shifts to the nonmoving party to present evidence that creates a genuine issue of material fact. Fed.R.Civ.P. 56(e). To create a genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.'*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

> [I]t is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). In determining whether to grant summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Tzung v. State Farm Fire & Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

■ The policy in question contains a clause that purports to void the policy in the case of misrepresentation by the insured. That clause reads as follows:

> This entire policy shall be void in the event either or both of the following:
>
> (a) if you have concealed or misrepresented, in writing or otherwise, any material facts or circumstances concerning this insurance.
>
> (b) if you shall make any attempt to defraud us, either before or after a loss.

Policy at 20 (Exhibit A to Waddell affidavit). TIE asserts that Onyon omitted certain facts from his first statement, that the omissions were material, and that the omission was

intended to ensure coverage under the policy. TIE concludes that it is entitled to summary judgment. Onyon opposes summary judgment, contending that he did not conceal any material facts in his first statement, that any lack of candor was on the advice of counsel, and that he voluntarily revealed the facts in his second statement.

■■■ Under Washington law, a clause voiding an insurance policy for the insured's material misstatement is enforceable. *See Mutual of Enumclaw Ins. Co. v. Cox,* 110 Wash.2d 643, 649, 757 P.2d 499 (1988); *Saint Paul Mercury Ins. Co. v. Salovich,* 41 Wash. App. 652, 705 P.2d 812, *review denied,* 104 Wash.2d 1029 (1985). Such a clause is enforced regardless of whether the misstatements caused any prejudice to the insurance company by causing it to bear the risk of additional risk. *Cox,* 110 Wash.2d at 649, 757 P.2d 499. The key question is whether the misstatement was material. *Id.* While materiality is generally a mixed question of law and fact, it may be decided as a matter of law "if reasonable minds could not differ on the question." *Long v. Insurance Co. of N. Am.,* 670 F.2d 930, 934 (10th Cir.1982).

Regarding allegations of false swearing, a misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented.

*Id.; see also Pacific Indemnity Co. v. Golden,* 791 F.Supp. 935, 938 (D.Conn.1991), *rev'd,* 985 F.2d 51, 56 (2d Cir.1993) (restating the standard as "the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding.") (other citations omitted).

In the instant case, Onyon omitted facts in his first statement that a reasonable insurance company would have found important in denying coverage. Onyon purported to limit his first statement to those facts of which he had personal knowledge. He omitted to tell TIE that his employee had seen a front end loader run into the retaining wall several weeks before the retaining wall collapsed while the loader was involved in snow removal.[1] In the second statement, Onyon admits that he failed to give this information to TIE in the first statement. He also admits that, under advice from counsel, he did not give the information because the information would make the claim more complicated and may preclude recovery from TIE. The statement, as set out in the margin,[2] can lead

---

[1] Following is an excerpt of the second statement.

Q Recently some new information has come to light regarding this.... Would you please describe for me or repeat the new information that you presented to me.

A About a week before the collapse of the wall, a week, week and one half, we had contracted with a local person to remove snow in the parking lot.... The following day he sent a fellow over to clear the parking lot and while he was doing that he ran into the side of the building and took a chunk out of the rear corner. And also, as he was clearing it, he was banging up against the back retaining wall to the point where we could feel the vibrations right into the store. One of my employees went out and talked to him about it.

Second Recorded Statement at 3.

[2] The colloquy continued (Second Statement at 10–11):

Q Now, also, this information just occurred recently. Would you explain why?

A Yes. From the beginning, I had a conversation with my attorney, Chris Fletcher.... He suggested to me that we just file a claim as storm damage and that sort of thing because it would be a lot simpler and yakkety, yak, yak, yak. He advised us to file a claim as weather damage. And not say anything about this other thing.... So we went along with his advise [sic].... I have since had conversations with him relative to the viability of his advice to us. He admits he made an error in judgement [sic], he is willing to discuss that error in judgement [sic] with you. In other words, he is willing to own up to the fact that he have bad advice [sic]....

Q Did you request why he ... the reason behind going with just the, just the weather?

A He felt that it would be easier to just file an insurance claim and get the money from the insurance company and fix the parking lot and the wall and yakkety yak, and make it nice and simple, but if we have to deal with other contractors and this guy who was working the equipment, it would be hard to prove and he was advising me to take the easy way out. And of course, at the time I thought that ... I thought it was going to be the easy way out.

Q Did he ever mention anything about going after the operator or anything like that as another method or angle, I guess. Was that discussed, or just dropped?

A Well, he said that was a possibility, but likelihood of collecting from a guy who just oper-

to only one conclusion: The omitted facts were material. Under the clear language of the policy, the material misrepresentation voids the policy as a matter of law, and Onyon is not entitled to any recovery.

Onyon argues that he did not conceal any material facts. He argues that he did not personally observe the operation of the front end loader and that the "ground rules" of the first statement were that Onyon would confine his remarks to his personal observations.[3] Regardless, Onyon had knowledge that a front end loader may have damaged the wall, he informed counsel of that knowledge, and Onyon failed to tell TIE of facts that could alter the course of its investigation.

Onyon also argues somewhat disingenuously that the facts were not material. He asserts that the cases cited by TIE[4] are distinguishable because in those cases the concealed facts went to the insurer's defense and not to the claim that the insured now asserts. He argues that the concealed facts must conceal the basis of the insurer's defense and that in this case the facts concealed go to the insured's claim.[5] If, however, the concealed facts are relevant to the claim that he now asserts, these facts must be material. At the time of the loss, Onyon considered the facts sufficiently material to mention them to his attorney. Yet Onyon chose not to tell TIE apparently after being advised by his attorney that these facts, if disclosed, might make recovery under the policy more difficult. Seen in this light, Onyon's assertion that the facts were not material rings hollow. Reasonable minds could not differ on whether the facts are material; accordingly, summary judgment is appropriate.

Onyon also claims that his initial lapse should be excused because, after all, he finally did come forward and "voluntarily" reveal the facts that he initially found immaterial. He fails to mention that he only came forward after TIE had completed its investigation and denied coverage. Moreover, other courts have rejected similar "retraction" defenses. *See Pacific Indemnity,* 791 F.Supp. at 938. The *Pacific Indemnity* court gave two reasons for rejecting this defense. First, misstatements mislead the insurance company's investigation and may cause added expense in conducting the investigation. *Id.* at 939–40. Second, the Court found "absurd" the idea that "a claimant could make a false statement to his insured, sit back and see how the investigation was proceeding, and then recant with impunity if his lie were in danger of being exposed." *Id.* at 940. This Court rejects Onyon's argument for the same reasons.

Quoting *Bosko v. Pitts & Still, Inc.,* 75 Wash.2d 856, 864, 454 P.2d 229, 234 (1969), Onyon also asserts that TIE "is charged with the knowledge which it would have obtained had it pursued a reasonably diligent inquiry." Onyon, however, overlooks the next sentence in that opinion, which states "An insurer should not be able to escape its contractual obligations by purposely keeping itself ignorant of essential facts." *Id.* at 864–65, 454 P.2d at 234. As shown by its questioning of Onyon, TIE was actively seeking information concerning the failure of the retaining wall. It was Onyon who was attempting to keep TIE ignorant of the essential facts, and he should not now complain that TIE did not conduct a reasonably diligent inquiry.

■ The Court will address two potential problems to the documents submitted sup-

---

ates machines is practically nil. So, I [sic] advised me against following that course of action.

**3.** Near the beginning of the statement, Onyon stated "I can tell you what I saw." First Recorded Statement at 1.

**4.** The cases that Onyon attempts to distinguish are *Long v. Insurance Co. of N. Am.,* 670 F.2d 930 (10th Cir.1982); *American Divers Supply & Mfg. Corp. v. Boltz,* 482 F.2d 795 (10th Cir.1973); *Pacific Indemnity Co. v. Golden,* 791 F.Supp. 935

(D.Conn.1991), *rev'd* 985 F.2d 51 (2d Cir.1993); *Mutual of Enumclaw Ins. Co. v. Cox,* 110 Wash.2d 643, 757 P.2d 499 (1988); *Perry v. Continental Ins. Co.,* 178 Wash. 24, 33 P.2d 661 (1934); and *Saint Paul Mercury Fire Ins. Co. v. Salovich,* 41 Wash.App. 652, 705 P.2d 812 (1985).

**5.** As Onyon puts it: "In TIE's six cited cases the insured *hid the carrier's shield.* In the instant case Onyon stands accused of *hiding his own sword."* Memorandum in Opposition to Summary Judgment at 22.

porting TIE's motion for summary judgment. First, the recorded statements were not taken under oath and do not appear to have been professionally transcribed. Second, Onyon argues that summary judgment is premature because he has not yet had time for discovery. *See* Fed.R.Civ.P. 56(f). Specifically, Onyon contends that he has not yet received a copy of the tapes or notes regarding other discussions that Onyon had with TIE representatives.

While the recorded statements were not taken under oath and were not professionally transcribed, Onyon admits the substance of the transcripts that were submitted by TIE in support of its summary judgment motion. *Compare* First Recorded Statement *and* Second Recorded Statement (Attached to Waddell Affidavit) *with* Response Memorandum at 1–4 *and* Onyon Affidavit. He does not attempt to discredit the transcripts nor argue with the facts stated therein. He has not challenged the admissibility of the statements. Thus, he has failed to create a genuine issue of material fact, and summary judgment is appropriate.

■■■ Onyon also argues that summary judgment is premature because discovery is incomplete. He did not challenge the validity or veracity of the tapes, and those tapes alone establish the basis for summary judgment. It is hard to conceive that additional discovery will change the facts as admitted by Onyon. Moreover, Onyon has failed to show what discovery he seeks and how that information would preclude summary judgment. *See Shortt v. Richlands Mall Assocs.,* 781 F.Supp. 454, 457 (W.D.Va.1991). Accordingly, the Court need not stay a decision on the summary judgment motion pending further discovery. *See* Rule 56(f).

### III

In conclusion, TIE met its burden of showing that Onyon made material misstatements and that these misstatements voided the policy, thereby precluding any coverage. Onyon failed to create a genuine issue of material fact. Because summary judgment is appropriate on this issue, the Court need not address the issue of whether the damage to the building and retaining wall is excluded by the policy.

In accordance with the foregoing, TIE's motion for summary judgment is GRANTED. The Clerk of the Court is directed to send copies of this Order to all counsel of record.