435 So.2d 284 (1983)
Robert V. WENDEL, Appellant,
v.
STATE FARM FIRE & CASUALTY CO., Appellee.
No. 82-1194.
District Court of Appeal of Florida, Fifth District.
June 23, 1983.
Rehearing Denied August 3, 1983.
Bill McCabe of Shepherd, McCabe, & Cooley, Orlando, for appellant.
Margaret E. Sojourner of Hass, Boehm, Brown, Rigdon & Seacrest, P.A., Orlando, for appellee.
COBB, Judge.
This is an appeal from a final judgment voiding an insurance policy with theft coverage on the basis of a misrepresentation made to the carrier, State Farm, by the insured, Robert Wendel. The issues on appeal are two-fold: the first is the applicability of a "fraud" clause in the policy to a post-application setting; the second is whether or not the misrepresentation was material.
In regard to the first issue, the trial court found that the "concealment or fraud" clause in the policy related to fraud throughout the policy, rather than simply to the application process. The pertinent provision states:

*285 Concealment or Fraud. This entire policy shall be void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.
Wendel, relying on section 627.409, Florida Statutes (1981),[1] contends that the policy provision relates solely to misrepresentations involved in the application for an insurance policy. That section provides for an insurance policy to be deemed void if misrepresentations are present in the insurance application. He argues that, at the least, this provision is ambiguous, and therefore must be construed most favorably to the insured and against the insurance company. We agree. If the carrier had intended that this clause apply to a time period other than that referred to in the statute, the wording should have been in clear and unambiguous language, for example:
This entire policy shall be void if any insured at any time intentionally conceals or misrepresents any material fact or circumstance relating to this insurance.
Even if the trial court had been correct in its interpretation of the time period covered by the foregoing fraud clause, we find, in regard to the second issue, that it was in error in holding that Wendel made a material misrepresentation to the carrier which would justify the voiding of the entire policy. The misrepresentation in this case concerns the status of Thomas (Sean) Brennan. State Farm contends that Wendel's initial description of Brennan as a "roommate-renter" constitutes a material misrepresentation, since Wendel subsequently changed his categorization of Brennan's status to that of non-paying occasional guest.
The facts show that Wendel, a 30-year-old music director, moved into a home in Casselberry, Florida, in June, 1978. At that time he obtained a homeowner's insurance policy from State Farm, which was renewed the following year. It covered the theft of personal property in the amount of $19,500. The policy covered "personal property owned or used by any insured while it is anywhere in the world." It specifically did not cover "property of roomers, boarders and other tenants, except property of roomers and boarders related to any insured." Furthermore, the policy did not include loss covered by theft if, inter alia, the theft is "from any part of a residence premises while it is occasionally rented to others."
Wendel testified that he met Brennan while they were working in a show together. They became friends and Brennan moved into Wendel's house in November of 1978. Both Brennan and Wendel testified at trial that Brennan would stay in the house periodically, although he had a motel room provided for him by his employer.
Brennan testified that he would stay at Wendel's home on performance days, while on his days off he would go to his condominium in Kissimmee, where his mother lived. He said he put a bedroom set, which would not fit in Kissimmee, at Wendel's home in Casselberry, as well as some theatrical belongings and clothes. He said there was no regular arrangement for payment, but that he paid for his own long-distance phone calls and sometimes donated towards the utilities and groceries. He also testified that the longest he stayed at Wendel's *286 home was for five consecutive nights, either staying at Kissimmee or in a motel on the other nights.
The theft at issue herein was discovered by Brennan and Wendel in April, 1980, when they found that the home in Casselberry had been burglarized. They immediately called the police, as well as State Farm, and notified them of the loss. Wendel testified that he talked with a Mr. McDougal, from State Farm, on April 10, 1980, and told him that Brennan paid $100 per month and part of the utilities, classifying him as a "roommate-renter." Later, he repudiated this statement, saying it was the standard story he would tell in order to keep other people in the acting profession from wanting to stay at his home rent-free. Wendel said that he told McDougal the true story during a point in the conversation that was not recorded, and continued to deny the roommate-renter status after consulting with an attorney and realizing that the distinction was crucial.
Robert McDougal, a claims specialist for State Farm, testified that he had become aware at some time that Wendel was claiming that Brennan was not his tenant. He also testified that he had never talked to Brennan nor to Brennan's mother during the investigation. State Farm's resident claims supervisor, Sam Moore, testified that the claim was denied mainly because some of the property was not covered, since it was owned by a roommate/renter. Additionally, Moore cited the fact that the values were higher than they should have been, that the property was on part of the property not occupied exclusively by the insured, and the fact that there was a misrepresentation made in Wendel's statement to McDougal. Moore also confirmed that in subsequent conversations with Wendel, prior to State Farm's rejection of the Proof of Loss, Wendel denied that Brennan was his roommate.
Following the trial, the court made the following ruling:
That the insured, Robert V. Wendel, in the representations to State Farm Fire and Casualty Co. regarding the status of Sean Brennan, did make an intentional misrepresentation, and that based upon said intentional misrepresentation, and taking into consideration the state of the law in Florida, it is found that the policy of insurance is void and of no force and effect... .
Clearly, the "misrepresentation" made by Wendel to McDougal was not made for the purpose of defrauding the insurance company. Wendel relies on Berkshire Mut. Ins. Co. v. Moffett, 378 F.2d 1007 (5th Cir.1967), to support his contention that the misrepresentation that occurred here was minimal and insufficient to allow for the policy to be voided. In Berkshire, a case arising in Florida, the defendant insurance company appealed from a judgment for the plaintiff under a fire insurance policy. The defendant had contended below that the policy was void because the plaintiff had misrepresented the value of the items destroyed and had claimed certain items were destroyed that were not even in the building at the time of the fire. The appeal court affirmed, noting the general rule of law in regard to concealment and fraud, stating:
If such proofs (sworn Proofs of Loss) contain false statements, known by the person making them to be false, for the purpose of perpetrating a fraud, the entire policy of insurance will be voided and the person making the fraudulent statement will take nothing under the policy.
378 F.2d at 1012.
The court also quoted from an earlier Fifth Circuit case, Chaachou v. American Central Ins. Co., 241 F.2d 889 (5th Cir.1957), which stated:
[T]he insurer must satisfy the heavy burden of establishing that the conduct complained of was done and was a wilful, purposeful misrepresentation of facts having substantial materiality under circumstances to which the law would attribute the intention to defraud, that is, cheat, deceive and cause the insurer to do other than that which would have been done had the truth been told.
78 F.2d at 1012.
The court in Berkshire held that an overestimate of the value of goods lost in a fire, *287 an error in judgment with respect to the fixing a value, a mistake, or an inadvertence will not render an insurance contract void, and the rule voiding a policy of insurance will not apply in its severity unless the proof of the false swearing was such that no other conclusion can be drawn than that a purposeful misrepresentation was intended. In Berkshire, the court found that the evidence was such that reasonable men could differ as to whether there was a conscious, wilful and fraudulent misrepresentation on the part of the plaintiff, which was properly resolved by the jury verdict for the plaintiff.
While the instant case does not deal with a false allegation in a statement of loss, the language from Berkshire requiring a conscious, wilful and fraudulent misrepresentation in order to void a policy, is applicable to the instant case, since the misrepresentation made by Wendel was not such that would cause harm to the insurance company.
In Rodgers v. Auto-Owners Ins. Co., 379 So.2d 700 (Fla.2d DCA), cert. denied, 388 So.2d 1109 (Fla. 1980), the plaintiff's motion for a directed verdict was denied, and a jury verdict rendered for the insurance company on plaintiff's claim that the insurance company wrongfully refused to pay her policy for damage from a fire. The insurance company claimed that Rodgers made a material misrepresentation in her Proof of Loss when she claimed that she had no knowledge of the fire, when in fact there was circumstantial evidence that she had set the fire herself. The district court reversed, finding that in order for the insurance company to establish its defense, it had to prove that after the fire Rodgers knowingly and wilfully misrepresented facts material to the insurance company's risk, a burden it had failed to meet.
In the instant case, the misrepresentation alleged was Wendel's statement as to Brennan's status as a roommate, and this was corrected prior to the Proof of Loss being filed. This type of misrepresentation is not such that can be seen as material to the insurance company's risk, such as padding the damages or in any way attempting to receive more from the insurance company than was due. In fact, this misrepresentation in itself had little or no effect on either the coverage or the recovery possible under the policy.
Accordingly, the judgment below is
REVERSED.
ORFINGER, C.J., and UPCHURCH, J., concur.
NOTES
[1] § 627.409, Fla. Stat. (1981), provides in part:

(1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
(a) Fraudulent; or
(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
(c) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.