[No. 50132-1-I. Division One. April 14, 2003.]

DIAMOND "B" CONSTRUCTORS, INC., *Appellant,* v. GRANITE FALLS SCHOOL DISTRICT, *Respondent.*

158

*Arthur D. McGarry* and *Douglas S. Oles* (of *Oles Morrison Rinker & Baker, L.L.P.*), for appellant.

*Christopher J. Knapp* (of *Megan Otis Masonholder*), for respondent.

AGID, J. — Diamond "B" Constructors, Inc. (Diamond) appeals from summary judgment dismissal of its complaint, arguing the trial court should have granted summary judgment in its favor because the only reasonable interpretation of the parties' construction contract supports its position that the contract does not require it to use a specific equipment installer. We agree that, although the Granite Falls School District (District) could have specified an installer, it failed to do so. Because its insistence that Diamond use a more expensive installer caused Diamond to lose money on the contract, the District is liable to Diamond for the additional costs it incurred. We therefore reverse and remand with directions to the trial court to enter judgment for Diamond.[1]

---

[1] In addition to maintaining that the trial court's ruling is correct, the District argues Diamond lacks standing to bring its cause of action and Diamond's complaint fails to state a claim upon which relief can be granted. We reject both arguments. Diamond has standing because the general contractor, Allied, assigned its claim against the District to Diamond in the claim submission agreement. Diamond's complaint states a claim upon which relief can be granted because it seeks equitable adjustment under Article 7 of the contract.

## FACTS

In September 2000, the District received competitive bids for modernization work on two schools (the project). It awarded the general contract to the low bidder, Allied Construction Associates, Inc. (Allied). On October 10, 2000, Allied entered into a subcontract with Diamond to perform mechanical and electrical work for the project.

On behalf of Diamond, Allied submitted a claim for additional compensation that is the subject of this appeal. The basis of the claim is that Diamond had latitude under the contract to use anyone qualified to install Honeywell temperature control equipment and that its bid was properly based on using Sound Energy, an approved Honeywell installer, which quoted an installation price of $212,219. After Allied and Diamond signed a contract based on Diamond's low bid from Sound Energy, the District announced that it would require Diamond to use Honeywell Mercer Island as both manufacturer and installer of the Honeywell equipment, asserting the contract required both. Honeywell Mercer Island charged Diamond $265,000 for installation. Diamond requested compensation from the District for the $52,718 difference plus markups as a change to its subcontract.

The District denied the claim. Allied and Diamond executed a Claim Submission Agreement by which Allied assigned its claim to Diamond and authorized it to prosecute the claim directly against the District. Ruling that the District properly interpreted the contract, the trial court granted summary judgment dismissing Diamond's complaint. This appeal followed.

## DISCUSSION

■■ The trial court granted summary judgment because it agreed with the District's interpretation of the contract that only Honeywell Mercer Island could be used to install the Honeywell equipment. Summary judgment is

proper when there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law.[2] This court conducts the same inquiry as the trial court in reviewing a summary judgment order, reviewing it de novo and viewing all evidence in the light most favorable to the nonmoving party.[3] In the contract interpretation context, summary judgment is improper if the parties' written contract, viewed in light of the parties' other objective manifestations, has two or more reasonable but competing meanings.[4]

 " 'The cardinal rule with which all interpretation begins is that its purpose is to ascertain the intention of the parties.' "[5] Extrinsic evidence of the circumstances under which a contract was made is admissible to determine that intent.[6] We may discern intent from the actual language of the disputed provisions, the contract as a whole, the subject matter and objective of the contract, the circumstances in which the contract was signed, the later acts and conduct of the parties, and the reasonableness of the parties' interpretations.[7] The court considers the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made in those negotiations, trade usage, and the course of dealing between the parties.[8] " '[U]nexpressed impressions are meaningless when attempting to ascertain the [parties'] mutual intentions.' "[9] "[M]utual intent may be established

---

[2] CR 56(c).

[3] *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 92-93, 993 P.2d 259 (2000).

[4] *Hall v. Custom Craft Fixtures, Inc.*, 87 Wn. App. 1, 10, 937 P.2d 1143 (1997).

[5] *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990) (quoting Arthur L. Corbin, *The Interpretation of Words and the Parol Evidence Rule*, 50 Cornell L. Quar. 161, 162 (1965)).

[6] *Id.* at 667.

[7] *Id.* (citing *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 254, 510 P.2d 221 (1973)).

[8] *Id.* at 667-68.

[9] *Lynott v. Nat'l Union Fire Ins. Co.*, 123 Wn.2d 678, 684, 871 P.2d 146 (1994) (quoting *Dwelley v. Chesterfield*, 88 Wn.2d 331, 335, 560 P.2d 353 (1977)).

directly or by inference—but any inference must be based exclusively on the parties' objective manifestations."[10]

I. Paragraph 1.06:

█ The central issue on appeal is whether paragraph 1.06 of the contract allows Diamond to contract with installers other than Honeywell Mercer Island to install the Honeywell equipment. The paragraph provides:

1.06 SYSTEM MANUFACTURER

A. System *provided* by Honeywell (local branch office in Mercer Island) as an extension of the existing system, no substitute.[11]

The District relies on the contract definition of "provide" to support its position that only Honeywell Mercer Island could install the equipment:

Furnish, Install, Provide: The terms "Furnish" or "Install" or "Provide," unless specifically limited in context mean: furnishing and incorporating a specified item, product or material in the work, including all necessary labor, materials, equipment to perform the work required, ready for use.

It also relies on paragraph 1.01, which provides in part:

Where the word "provide" is used, it means "furnish and install complete and ready for use".

At first reading, these definitions appear to create an ambiguity. While they could be interpreted to require that Honeywell Mercer Island provide and install the equipment, upon closer inspection the only viable interpretation is that they provide only that a specified item be furnished and installed, not that a specific installer be used. There are many reasons for this conclusion. First, because the broad definition of "provide" depends on the context in which it is used, it is reasonable to interpret its purpose as ensuring that the District receives the specified item, Honeywell temperature control equipment, and that the equipment is

---

[10] *Hall*, 87 Wn. App. at 9 (citation omitted).

[11] (Emphasis added.)

installed. Second, paragraph 1.06 states that the *equipment* be "an extension of the existing system," indicating that the provision pertains only to the equipment, not the installer. Third, the definitions section states that definitions are general and neither complete nor exclusive. Fourth, there is a separate definition for "Installer." Fifth, paragraph 1.06 is titled "SYSTEM MANUFACTURER," not installer. And evidence external to the contract supports our reading. In conversations with Diamond, the District merely said it "preferred" not to use Sound Energy as the installer, not that it required a specific installer. Finally, in an earlier similar contract between the parties, the District allowed Diamond to use Sound Energy as the installer.

II. Definitions are Neither Complete nor Exclusive

The definitions section of the contract provides that

> Definitions and explanations contained in this section are not necessarily either complete or exclusive, but are general for the work to the extent they are not stated more explicitly in another element of the contract documents.

As such, the definition of "provide" on which the District relies was a general definition more explicitly defined in paragraph 1.06 and in the specific definition of installer.

III. Definitions are Specifically Limited in Context

The District's reliance on the general definition of "Furnish, Install, Provide" is further undermined by its own language:

> Furnish, Install, Provide: The terms "Furnish" or "Install" or "Provide," *unless specifically limited in context* mean: furnishing and incorporating a specified item, product or material in the work, including all necessary labor, materials, equipment to perform the work required, ready for use.[12]

Diamond contends that paragraph 1.06 is the "context" specifically limiting the definition. We agree.

---

[12] (Emphasis added.)

IV. "SYSTEM MANUFACTURER" Paragraph Title:

■ Paragraph 1.06 should be construed to allow install-ers other than Honeywell Mercer Island because the plain language of the paragraph title, "SYSTEM MANUFAC-TURER," indicates the provision pertains only to the com-pany that manufactures the temperature control equip-ment, not the installer.

The District asserts the title is meaningless because the contract states that "[t]he section title is descriptive only and not intended to limit the meaning or content of a section or to be completely descriptive of requirements specified therein." It also asserts that Diamond's interpre-tation of the title is incorrect because Honeywell Mercer Island has never been a "manufacturer" of automatic tem-perature controls. Neither argument is persuasive.

First, the provision the District relies on provides that the "*section* title is descriptive only."[13] It does not state that any other headings in the contract are merely descriptive. The title at issue, "SYSTEM MANUFACTURER," is a paragraph title, not a section title. Paragraph 1.06 falls under section 15900, titled "AUTOMATIC TEMPERA-TURE CONTROLS." The District's second assertion is equally unpersuasive because Diamond does not argue that Honeywell Mercer Island manufactures Honeywell equip-ment. Rather, it contends paragraph 1.06 specifies only that Honeywell equipment be used for compatibility purposes because the school's preexisting equipment is manufac-tured by Honeywell.

An examination of the contract as a whole establishes that the District included three separate definitions to ensure that it, as the project owner, received complete, installed equipment from its contractors. This is the same concern reflected in the definition of "provide" in paragraph 1.01.[14] This concern has nothing to do with requiring

---

[13] (Emphasis added.)

[14] Part 1.01, titled "WORK INCLUDED," provides in part: "Where the word 'provide' is used, it means 'furnish and install complete and ready for use'."

contractors to use the manufacturer's local office to install the equipment. The District does not respond to this interpretation.

V. A Separate Definition for "Installer":

██ ██ The District's reliance on the definition of "Furnish, Install, Provide" is further undermined by the contract's separate definition of "Installer":

> the entity (person or firm) engaged by Contractor or its subcontractor or sub-subcontractor for performance of a particular unit of work at the project site, including installation, erection, application and similar required operations. It is a general requirement that such entities (installers) be expert in operations they are engaged to perform.

Where the contract provides a general and a specific term, the specific controls over the general.[15] Therefore, the word "provide" in paragraph 1.06 does not include "installer" except where specifically required because the contract provides a separate definition of the "Installer." If we were to adopt the District's interpretation, the definition of "Installer" would be meaningless. We must construe a contract to give meaning to every term.[16]

VI. Extrinsic Evidence:

Diamond's project manager, William Parker, telephoned the District's engineer on bid day and spoke with Vern Ennes to clarify the requirements of paragraph 1.06. This led to a series of telephone conversations and voice mails before bid submission. Parker described the exchanges in his deposition. He said that Ennes told him he would speak with the project engineer, Peter Niu, and get back to him. Ennes left a voice mail message to the following effect: "[H]e [Mr. Ennes] had contacted Peter Niu and that he had indicated Granite Falls School District *preferred* not to have

---

[15] *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 630, 869 P.2d 1034 (1994).

[16] *City of Seattle v. Dep't of Labor & Indus.*, 136 Wn.2d 693, 698, 965 P.2d 619 (1998).

Sound Energy utilized as an installer."[17] Parker called Ennes back and left him a voice mail message, stating:

> [W]e thought from reading the specifications it only specified the materials to be used and that the installer as long as they were a licensed Honeywell installer could be anybody as well as other mechanical contractors would utilize whose ever price was lowest for the bid.

Diamond therefore believed that although it was not the preferred installer, Sound Energy could be included in the bid. The District responds that Ennes' message does not constitute implicit approval of Sound Energy. The District's response is beside the point. Ennes' message neither disqualified Sound Energy nor required Diamond to use Honeywell Mercer Island. By stating only a "preference," not a requirement, Ennes' message clearly did not rule out Sound Energy.

VII. Course of Conduct:

The course of conduct between the District and Diamond also supports Diamond's interpretation. In an earlier similar contract on the same school, Diamond used Sound Energy to install Honeywell equipment. That contract also included a requirement that Diamond "provide" Honeywell equipment as "an extension of the existing Honeywell, Inc. system (Excel) as installed by Honeywell, Inc." Even though that contract contains the same, or arguably a more specific specification as the one at issue here requiring Diamond to "provide" Honeywell equipment, the District now argues the clause has additional meaning: that Honeywell Mercer Island can be the only allowed installer.

██ The District asserts that prior negotiations and contract terms have no bearing on the intent of the parties to the current contract and, even if they did, they are irrelevant because Sound Energy had performed poorly in the past. The District's arguments are not persuasive. First, the court may look to the course of dealing between

---

[17] (Emphasis added.)

the parties when construing a contract.[18] Second, merely because the District thought Sound Energy's performance in the past was poor does not mean that paragraph 1.06 restricts Diamond's choice of installers to Honeywell Mercer Island. There are other qualified installers.

VIII. The District's Arguments:

The District makes two additional arguments. First, it contends Diamond submitted its bid without reading the definitions in the contract and therefore cannot assert an after-the-fact interpretation because the proper inquiry is the intent of the parties at the time of contracting. The District also argues Diamond made a unilateral mistake and assumed the risk that Sound Energy would not be allowed to install the equipment. We reject both arguments.

First, we do not know whether Diamond read the contract or not. Even if Parker did not read the contract in its entirety, he is only one of four members of the committee reviewing the bid documents in preparing Diamond's bid. In any case, whether anyone read the definitions in the contract does not determine what it means. Diamond's interpretation of the contract has been consistent. It believed at the time of contract that while only Honeywell equipment was allowed, it could use any qualified installer. This is confirmed by the telephone calls the parties made when Diamond was submitting its bid on the current contract.

Second, the District's claim that Diamond made a unilateral mistake and assumed the risk that Sound Energy would be disqualified is misplaced. The District apparently makes this argument as a corollary to its characterization of Diamond's claim as an action for reformation of the contract. It asserts Diamond should have interpreted the engineer's telephone message that Sound Energy was not a "preferred" installer as clarification of paragraph 1.06. We disagree. First, if the District intended to clarify the con-

---

[18] *See, e.g., Puget Sound Fin., L.L.C. v. Unisearch, Inc.,* 146 Wn.2d 428, 47 P.3d 940 (2002); *Morgan v. Stokely-Van Camp, Inc.,* 34 Wn. App. 801, 808-09, 663 P.2d 1384 (1983); Restatement (Second) of Contracts § 223 (1981).

tract by specifying a sole source installer, it could do so only by formal addendum or other document issued to all bidders.[19] Second, the contract said nothing to indicate that the District did not want to use Sound Energy. The District knew how to write the specification requiring that the system manufacturer be Honeywell, and it could have written a similar specification requiring that Honeywell Mercer Island be the installer. But it did not do so. Finally, the District, to its own detriment, cites legal authority for the proposition that courts will relieve a party from unilateral mistake if the other party had knowledge of the mistake when the contract was entered into. The District knew of Diamond's interpretation. Diamond made a telephone inquiry about whether it could use Sound Energy, and the District merely said it was not the preferred installer. Parker responded to the message by confirming Diamond's understanding that any qualified Honeywell installer would be allowed. The District had the requisite knowledge.

We reverse and remand to the superior court for entry of summary judgment for Diamond.

Cox, A.C.J., and COLEMAN, J., concur.

---

[19] General Conditions 1.1.1 and 1.1.2.