[No. 29292-1-II. Division Two. July 13, 2004.]

ALLSTATE INSURANCE COMPANY, *Respondent*, v. EDWIN I. HUSTON, ET AL., *Appellants*.

*Craig F. Schauermann* (of *Schauermann, Thayer & Jacobs, P.S.*), for appellants.

*Jerret E. Sale*, *Deborah L. Carstens*, and *Douglas F. Foley* (of *Bullivant Houser Bailey, P.C.*), for respondent.

MORGAN, A.C.J. — In this fire insurance case, a jury found that the insureds had not committed arson but had made material misrepresentations to the insurer. The insureds appeal, contending that their misrepresentations were immaterial and that bailiff or juror misconduct warrants a new trial. We affirm.

Edwin and Ruth Huston owned a house that Allstate insured against fire. Allstate's policy excluded coverage for any loss due to a fire that the insured set intentionally.[1] The policy also excluded coverage for "any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance."[2] We refer to these exclusions as "the arson clause" and "the material-misrepresentation clause," respectively.

On April 22, 1998, the Hustons' house burned while the Hustons were not at home. Investigators concluded that the fire started in the southwest corner of the bed in the master bedroom; that the wires to a smoke alarm just outside the bedroom had been disconnected before the fire; and that the fire had been intentionally set.

Edwin was the last person in the master bedroom. As he and Ruth were leaving the house, he said he had forgotten something. He then returned to the bedroom while Ruth waited for him in a disputed location. According to his later testimony, he did not notice anything amiss at that time.

---

[1] We assume this, as it seems undisputed. Neither party has seen fit to include a copy of the policy in the record on appeal.

[2] 1 Clerk's Papers (CP) at 3 (emphasis omitted). This is according to Allstate's complaint, which alleges and quotes this one sentence from the policy. The Hustons' answer does not deny the allegation or dispute the quotation. 1 CP at 8.

During Allstate's ensuing investigation, according to Allstate, Edwin and Ruth each misrepresented certain facts. (1) Edwin initially denied that he and Ruth were having marital problems before the fire. He later admitted to the contrary, and Ruth was seeking a divorce at the time of the trial herein. (2) Ruth initially told investigators that Edwin had disconnected the smoke alarm nearest the bedroom so he could work on it, and that it had been hanging down from the ceiling at the time of the fire. Ruth denied those statements at trial, Edwin denied working on the smoke alarm, and Edwin said that the smoke alarm had been attached to the ceiling and in working order when they left the house. (3) Edwin initially told investigators that a nephew of Ruth's had threatened to burn other property that he and Ruth owned. Edwin later denied making any such statements or knowing about any such threat, and Ruth later asserted that even though she had heard her nephew utter such threats, she had not told Edwin about them until after the fire. (4) Edwin initially told investigators that as he and Ruth had been leaving the house just prior to the fire, Ruth had waited in the car while he returned to the bedroom. At trial, Edwin and Ruth each testified that she had waited for him in the "mudroom" between the house and the garage, a vantage point from which she could see what he was doing as he returned to the bedroom.

On January 8, 1999, Allstate sued for declaratory judgment. It alleged that the Hustons intentionally set the fire and made material misrepresentations during the ensuing investigation. It prayed that it not be required to cover the fire and that the Hustons return all amounts already paid. The Hustons counterclaimed for breach of contract, bad faith, and violation of the Consumer Protection Act, chapter 19.86 RCW.

A jury trial was held in February 2002. The Hustons proposed a jury instruction that would have stated:

Allstate [c]laims that the Hustons made material misrepresentations in the presentation of the claim. A material misrep-

resentation is one that is designed, purposefully, by the insured (here, the Hustons) to mislead the insurance company. Additionally, for any statement to be a misrepresentation, it has to have been designed to falsely exculpate Mr. Huston of arson. A simple error does not constitute a material misrepresentation.[3]

No one proposed an instruction stating that the Hustons' misrepresentations, if any, must actually have misled or "prejudiced" Allstate.

Near the end of trial, the court distributed a tentative packet of jury instructions. The packet included Instruction 10, which stated:

Allstate claims that the Hustons made material misrepresentations in the presentation of the claim. A material misrepresentation is one that is designed, purposefully, by either of the insureds, or both of them, with the intent to mislead the insurance company.

The word "material" means important and relevant.[4]

The packet included Instruction 11, which stated:

[Allstate] has the burden of proving by a preponderance of the evidence that [the Hustons], or either one of them, intentionally misrepresented any material fact relating to the claim. The term "intentionally" means statements known to be false when made.

I instruct you that your verdict should be for [Allstate] if you find the [Hustons] intentionally misrepresented any material fact relating to their insurance claim, or the fire was intentionally caused by Mr. Huston, and for the [Hustons] if you find no material misrepresentation, but find bad faith and/or violation of the Consumer Protection Act.[5]

---

[3] Br. of Appellant at 49; 11 Report of Proceedings (RP) at 2269. This is according to the Hustons' brief. The Clerk's Papers include only a few of Allstate's supplemental proposed instructions and none of the Hustons' proposed instructions.

[4] 3 CP at 444.

[5] 3 CP at 445.

The packet included Instruction 13, which stated:

> A material fact may be concealed either by creating a false impression or covering up the truth.[6]

The packet also included a special verdict with six interrogatories, not all of which the jury was to answer under all circumstances. The special verdict contained the following questions:

1. Did the Defendant, Edwin Huston, intentionally burn the residence?
2. Did either of the Hustons make material misrepresentations in the presentation of their claim?
3. What is the amount of Allstate's damages?
4. Did Allstate Insurance Company fail to act in good faith and was it the proximate cause of damages to the Hustons because of this failure?
5. What is the amount of the Hustons' damages for Allstate's bad faith?
6. Did the Plaintiff, Allstate Insurance Company, fail to comply with the Consumer Protection Act?[7]

When the court distributed the tentative packet, it noted that it and the parties had spent "approximately . . . four or five hours, to arrive at [the] packet."[8] The court then invited formal objections to the instructions included and omitted. Objecting to Instruction 10 and the omission of their proposed instruction, the Hustons claimed that "a material misrepresentation" must not only be designed "with the intent to mislead the insurance company," but also must be designed "to falsely exculpate Mr. Huston of the arson."[9] Objecting to Instruction 11, the Hustons claimed that Allstate had to prove fraud by clear, cogent, and convincing evidence. Objecting to Instruction 13, the Hustons claimed that it was wrong to use the words "material fact" instead of

---

[6] 3 CP at 447.

[7] 3 CP at 488-89.

[8] 11 RP at 2275.

[9] 11 RP at 2269.

the words "material misrepresentation."[10] No one objected to the omission of an instruction or interrogatory that would have required the jury to decide whether the Hustons' misrepresentations, if any, had actually misled or "prejudiced" Allstate.

Overruling the Hustons' objections, the court gave the packet without changes pertinent to this appeal. The jury went out at 12:30 P.M. on Thursday, February 21, 2002, and came back at 4:45 P.M. on Friday, February 22, 2002. It answered the first interrogatory "no," the second interrogatory "yes," and the third interrogatory "zero." It did not answer the remaining interrogatories.

Three days after the verdict, the jury foreman wrote a letter to the court in which he expressed remorse about the way he had presided and voted. He said that at about 10:30 A.M. on Friday, February 22, he had heard in the elevator that "this case was 'the talk of the court house' "; that at about 4 P.M. that same day, the bailiff had told him that unless the jury made a decision soon, the judge would make it for them; and that the bailiff's comment had "prompt[ed him] to push for a verdict."[11]

On March 7, 2002, the Hustons moved for judgment notwithstanding the verdict or new trial, based in part on "bailiff misconduct."[12] On June 14, 2002, the trial court held an evidentiary hearing on the motion at which both the foreman and bailiff testified. The record on appeal does not contain a transcript of their testimony, of the trial court's oral ruling, of written findings of fact and conclusions of law, or of a written order disposing of the motion.

On August 30, 2002, the trial court entered judgment on the jury's verdict. It held that even though the Hustons had not committed arson, their material misrepresentations precluded them from recovering damages. It further held that Allstate was not entitled to damages, and that Allstate

---

[10] 11 RP at 2269-70.

[11] 3 CP at 521.

[12] 3 CP at 491.

was not entitled to its costs. The Hustons appealed, and Allstate cross-appealed the denial of its costs.

## I

The Hustons contend that their misrepresentations were immaterial as a matter of law, and thus that the trial court erred by denying relief. We address (A) whether Allstate's material-misrepresentation clause applies to the Hustons' post-loss misrepresentations, (B) whether the Hustons' misrepresentations fell within that clause, (C) whether the trial court erred by overruling the Hustons' objections to the jury instructions, and (D) whether the jury's special verdicts are inconsistent. We do not address prejudice.

## A

We turn first to whether the material-misrepresentation clause even applies to the Hustons' post-loss misrepresentations. Some years ago, such clauses generally stated that coverage would not be provided "if, *whether before or after a loss*, the insured ha[s] wilfully concealed or misrepresented any material fact or circumstance concerning this insurance."[13] More recently, such clauses have often been reworded to state that coverage will not be provided "for any insured who has intentionally concealed or misrepresented

---

[13] *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 582 A.2d 1257, 1260 (1990) (emphasis added); *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 181 n.4 (2d Cir.) ("[T]his entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof."), *cert. denied*, 469 U.S. 874 (1984); *Long v. Ins. Co. of N. Am.*, 670 F.2d 930, 933 (10th Cir. 1982) ("[T]his entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof."); *Fiore v. State Farm Fire & Cas. Co.*, 135 A.D.2d 602, 522 N.Y.S.2d 180, 181 (1987) ("standard provision" previously included the words, "whether before or after loss") (quoting a New York statute); *Tempelis v. Aetna Cas. & Sur. Co.*, 164 Wis. 2d 17, 473 N.W.2d 549, 554 (1991) ("[t]his entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof") (quoting *Stebane Nash Co. v. Campbellsport Mut. Ins. Co.*, 27 Wis. 2d 112, 133 N.W.2d 737, 744 (1965)), *aff'd*, 169 Wis. 2d 1, 485 N.W.2d 217 (1992) (emphasis omitted).

any material fact or circumstance."[14] According to some courts, these reworded clauses are ambiguous on whether they apply to post-loss misrepresentations; ambiguity must be resolved in favor of the insured; and thus such clauses do not apply to post-loss misrepresentations.[15] According to other courts, these reworded clauses are not ambiguous and plainly apply to post-loss as well as pre-loss misrepresentations.[16]

■ The clause in issue here is worded differently from those just described. It states that coverage will not be provided for "*any loss or occurrence in which* any insured person has concealed or misrepresented any material fact or circumstance."[17] The words we have italicized plainly

---

[14] *Longobardi*, 582 A.2d at 1259 (emphasis omitted); *Sales v. State Farm Fire & Cas. Co.*, 849 F.2d 1383, 1385 (11th Cir. 1988) ("This entire policy shall be void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance."); *Am. Employers' Ins. Co. v. Taylor*, 476 So. 2d 281, 282 (Fla. Dist. Ct. App. 1985) ("This policy is void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance."); *Wendel v. State Farm Fire & Cas. Co.*, 435 So. 2d 284, 285 (Fla. Dist. Ct. App. 1983) ("This entire policy shall be void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to his insurance."), *review denied*, 447 So. 2d 888 (Fla. 1984); *State Farm Fire & Cas. Co. v. Jenkins*, 167 Ga. App. 4, 305 S.E.2d 801, 802 (1983) ("This entire policy shall be void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance."); *Astoria Quality Drugs, Inc. v. United Pac. Ins. Co. of N.Y.*, 163 A.D.2d 82, 557 N.Y.S.2d 339, 340 (1990) ("This policy is void if any insured has intentionally concealed any material fact or circumstance relating to this insurance."); *Fiore*, 522 N.Y.S.2d at 181 ("This entire policy shall be void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance."); *N. River Ins. Co. v. Good Morning Farms, Inc.*, 105 A.D.2d 1095, 482 N.Y.S.2d 163, 164 (1984) ("This policy is void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance."); *Tempelis*, 473 N.W.2d at 554 ("We do not provide coverage for any insured who has . . . intentionally concealed or misrepresented any material fact or circumstance.").

[15] *See Wendel*, 435 So. 2d at 284-85; *Fiore*, 522 N.Y.S.2d at 181; *N. River Ins.*, 482 N.Y.S.2d at 164; *Tempelis*, 473 N.W.2d at 554.

[16] *See Sales*, 849 F.2d at 1386; *Am. Employers' Ins.*, 476 So. 2d at 283-84; *Jenkins*, 305 S.E.2d at 803; *Longobardi*, 582 A.2d at 1261; *Astoria Quality Drugs*, 557 N.Y.S.2d at 340.

[17] 1 CP at 3 (original emphasis omitted) (emphasis added).

encompass post-loss misrepresentations. Accordingly, the clause applies here.[18]

## B

■ We next address whether the Hustons' post-loss misrepresentations were "material" within the meaning of Allstate's clause. In Washington, a misrepresentation is material "when it 'concerns a subject relevant and germane to the insurer's investigation as it was then proceeding' at the time the inquiry was made."[19] In other words, a misrepresentation is material if, when made, it *could have* affected the insurer's investigation; or if, as a California court has said, it has *"prospective* reasonable relevance to the insurer's inquiry."[20] The law elsewhere is similar.[21]

[18] *Cf. Mut. of Enumclaw Ins. Co. v. Cox*, 110 Wn.2d 643, 650, 757 P.2d 499 (1988) (Washington Supreme Court applied a material-misrepresentation clause to a post-loss misrepresentation; relevant clause included the phrase "whether before or after the loss"); *St. Paul Mercury Ins. Co. v. Salovich*, 41 Wn. App. 652, 658, 705 P.2d 812 (issue not preserved for review), *review denied*, 104 Wn.2d 1029 (1985).

[19] *Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 224, 961 P.2d 358 (1998) (failure-to-cooperate case) (quoting *Fine*, 725 F.2d at 183); *Pilgrim v. State Farm Fire & Cas. Ins. Co.*, 89 Wn. App. 712, 719-20, 950 P.2d 479 (1997) (same). *See also, Onyon v. Truck Ins. Exch.*, 859 F. Supp. 1338, 1341 (W.D. Wash. 1994) ("misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented") (citation omitted).

[20] *Cummings v. Fire Ins. Exch.*, 202 Cal. App. 3d 1407, 249 Cal. Rptr. 568, 573 (1988) ("materiality is determined by its prospective reasonable relevance to the insurer's inquiry").

[21] *Dadurian v. Underwriters At Lloyd's, London*, 787 F.2d 756, 760 (1st Cir. 1986) ("it is sufficient if the statement was reasonably relevant to the insurance company's investigation of a claim"); *Fine*, 725 F.2d at 183 (materiality is satisfied "if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding"); *Long*, 670 F.2d at 934 ("misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented"); *Pac. Indem. Co. v. Golden*, 791 F. Supp. 935, 938 (D. Conn. 1991) ("the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding") (citation omitted), *rev'd on other grounds*, 985 F.2d 51 (2d Cir. 1993); *Parasco v. Pac. Indem. Co.*, 920 F. Supp. 647, 654 (E.D. Pa. 1996) ("In the context of an insurer's post-loss investigation, 'the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding.' ") (quoting *Fine*, 725 F.2d at 183); *Cummings*, 249 Cal. Rptr. at 573 ("materiality is determined by its prospective reasonable relevance to the

Materiality differs from prejudice. A misrepresentation is "material" if, *when made,* it *could have* affected the insurer's investigation. A misrepresentation is prejudicial if, *after being made,* it *actually did* affect the insurer's investigation.[22] The Washington Supreme Court apparently relied on this difference when, in *Mutual of Enumclaw Insurance Co. v. Cox,*[23] it held the insured's misrepresentations were "material" despite the absence of demonstrated prejudice.[24]

In this case, a rational trier of fact could either have found or declined to find that the Hustons' misrepresentations, when made, were "relevant and germane" to Allstate's ongoing investigation. Hence, the trial court correctly submitted materiality to the jury, which had discretion to rule as it did.

---

insurer's inquiry"); *Passero v. Allstate Ins. Co.,* 196 Ill. App. 3d 602, 554 N.E.2d 384, 388, 143 Ill. Dec. 449, 453 (1990) ("False sworn answers are material if they might have affected the insurer's action or attitude, or if they may be said to have been calculated to discourage, mislead, or deflect the insurer's investigation in any area that might have seemed to it, at that time, a relevant area to investigate."); *Longobardi,* 582 A.2d at 1263 (misrepresentation "is material if when made a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action").

[22] *See Tran,* 136 Wn.2d at 228-29 ("Claims of actual prejudice require 'affirmative proof of an advantage lost or disadvantage suffered as a result of the [breach], which has an identifiable detrimental effect on the insurer's ability to evaluate or present its defenses to coverage or liability.'") (quoting *Canron, Inc. v. Fed. Ins. Co.,* 82 Wn. App. 480, 491-92, 918 P.2d 937 (1996), *review denied,* 131 Wn.2d 1002 (1997)); *N.W. Prosthetic & Orthotic Clinic, Inc. v. Centennial Ins. Co.,* 100 Wn. App. 546, 550, 997 P.2d 972 (2000) ("To establish actual prejudice, the insurer must demonstrate 'some concrete detriment resulting from the delay which harms the insurer's preparation or presentation of defenses to coverage or liability.'") (quoting *Canron,* 82 Wn. App. at 486; *Unigard Ins. Co. v. Leven,* 97 Wn. App. 417, 427, 983 P.2d 1155 (1999) ("To establish actual prejudice, the insurer must demonstrate some concrete detriment, some specific advantage lost or disadvantage created, which has an identifiable prejudicial effect on the insurer's ability to evaluate, prepare or present its defenses to coverage or liability."), *review denied,* 140 Wn.2d 1009 (2000); *Am. Econ. Ins. Co. v. Lyford,* 94 Wn. App. 347, 355, 971 P.2d 964 (1999) ("To prove such prejudice, the insurer must demonstrate some concrete detriment—not speculation—resulting from the breach, together with some specific harm to the insurer caused thereby.").

[23] 110 Wn.2d 643, 757 P.2d 499 (1988).

[24] 110 Wn.2d at 648-49.

We have not considered whether the Hustons' misrepresentations had to be, or were, prejudicial. No one asked the trial court for an instruction requiring the jury to determine prejudice, the trial court did not give such an instruction, and no one objected to the omission. Because the jury was not instructed to, it did not determine whether prejudice had occurred, and on appeal no one has assigned error to the absence of that determination. Necessarily then, we leave for another day the question whether an insurer must show prejudice in order for an insured's post-loss misrepresentations to be "material" under policy language like that in issue here.[25]

Relying on *Oregon Mutual Insurance Co. v. Barton*,[26] the Hustons argue that even if their misrepresentations were "material" when made, they became nonmaterial "once the jury found no arson."[27] We disagree for several reasons. First, as already seen, materiality depends on the time a misrepresentation is made, not on when the jury reaches a verdict. Second, the Hustons are essentially asking us to conflate the material-misrepresentation clause and the arson clause,[28] a result that would render the former clause

---

[25] *Compare Tran*, 136 Wn.2d 214, a failure-to-cooperate case in which the court both required and found prejudice, *with Onyon*, 859 F. Supp. at 1341 (under Washington law, a material misrepresentation clause "is enforced regardless of whether the misstatements caused any prejudice to the insurance company") (citing *Cox*, 110 Wn.2d at 649), and *Longobardi*, 582 A.2d at 1263 ("Prejudice from a post-loss misrepresentation, therefore, is unnecessary to relieve the insurer of its liability."). The policy in this case is not in the record, so we cannot tell whether it contained a failure-to-cooperate clause as well as a material-misrepresentation clause, or how, if at all, the two clauses might relate.

[26] 109 Wn. App. 405, 36 P.3d 1065 (2001), *review denied*, 146 Wn.2d 1014 (2002).

[27] Br. of Appellant at 26 (emphasis omitted).

[28] The Hustons argue in their brief:

A misrepresentation simply cannot be "material" in this setting, an alleged arson case, unless it "falsely exculpates" the insured. Since the jury found that Mr. Huston did not commit the arson, the alleged misrepresentations about where Mrs. Huston was, the status of the marriage, the condition of one of the two smoke detectors, and all of the other alleged misrepresentations were not "material" and should not form a basis for denying the insureds relief under their policy of insurance.

Br. of Appellant at 18.

surplusage and violate the rules of contract construction.[29] Third, the Hustons' reliance on *Barton* is misplaced. The misrepresentations in *Barton* were made after the insurer and the insured had reached an accord and satisfaction, and thus after the insurer's investigation had (or should have) ended; hence, the misrepresentations were not relevant or germane to, and could not have affected, the insurer's investigation. The misrepresentations in this case were made while the insurer's investigation was ongoing and, when made, arguably could have affected the insurer's investigation. Here then, materiality was a matter for the jury to decide.[30]

## C

We turn to the jury instructions. As already seen, the Hustons objected to the giving of Instruction 10, and to the omission of their proposed instruction, arguing that a material misrepresentation must be designed "to falsely

---

[29] *Wagner v. Wagner*, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980) ("An interpretation of a writing which gives effect to all of its provisions is favored over one which renders some of the language meaningless or ineffective."); *Ball v. Stokely Foods*, 37 Wn.2d 79, 83, 221 P.2d 832 (1950) ("in the interpretation of contracts [ ] every word and phrase must be presumed to have been employed with a purpose and must be given a meaning and effect whenever reasonably possible"); *Diamond B Constructors, Inc. v. Granite Falls Sch. Dist.*, 117 Wn. App. 157, 165, 70 P.3d 966 (2003) ("We must construe a contract to give meaning to every term."); *Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wn. App. 416, 423, 909 P.2d 1323 (1995) ("courts favor the interpretation of a writing which gives effect to all of its provisions over an interpretation which renders some of the language meaningless or ineffective"); *Am. Agency Life Ins. Co. v. Russell*, 37 Wn. App. 110, 114, 678 P.2d 1303 (1984) (it is "our duty to read each contract in such a manner that every section is given effect").

[30] We do not overlook, but we do reject, the Hustons' reliance on *Chaachou v. American Central Insurance Co.*, 241 F.2d 889 (5th Cir. 1957). The language they quote and rely on (Br. of Appellant at 20-21, quoting *Chaachou*, 241 F.2d at 891 n.3) was not the holding of the appellate court, or even the holding of the trial court; it was, rather, the trial court's summary of a claim being made by the defendant. *See Chaachou*, 241 F.2d at 891 n.3 ("In this case, as the Court has already advised the jury, *it is the claim of the defendant* that the plaintiff overstated or exaggerated the extent of his damage and that he made material misrepresentations to the insurance company for the purpose of influencing them to pay him money to which he was not lawfully entitled and to which he knew he was not lawfully entitled under the terms of the policy." (emphasis added)).

exculpate Mr. Huston of the arson."[31] They objected to Instruction 11, claiming that Allstate had to prove fraud by clear, cogent, and convincing evidence. They objected to Instruction 13, claiming that it should use "material misrepresentation" instead of "material fact."[32] The trial court overruled each objection, and the Hustons assign error to those rulings.

The trial court did not err by overruling the objections to Instruction 10 and the omission of the Huston's proposed instruction. As already discussed, the material-misrepresentation clause applied to the Hustons' post-loss statements, and the jury could rationally have found those to be false and material when made. The jury's later finding of no arson did not cause the statements to become immaterial, and a determination of prejudice was not requested.

■ The trial court did not err by overruling the Hustons' objection to Instruction 11. Under *St. Paul Mercury Insurance Co. v. Salovich*,[33] preponderance was the applicable standard.

■ The trial court did not err by overruling the objection to Instruction 13. The difference, if any, between a "material fact" and a "material misrepresentation" is insignificant here. Moreover, a "material misrepresentation" is by its very nature manifested rather than concealed. Technically then, a "material fact," not a "material misrepresentation," is subject to concealment.

## D

The Hustons argue that the jury's finding of no arson was inconsistent with its finding of material misrepresentations. For reasons already discussed, however, the question of whether they intentionally set fire to the house is not the same as the question of whether they later made material

---

[31] 11 RP at 2269.

[32] 11 RP at 2269-70.

[33] 41 Wn. App. 652, 657-58, 705 P.2d 812 (1985).

misrepresentations. The jury could answer no to the first and yes to the second without being inconsistent, that is what it opted to do, and we find no error.

## II

The Hustons contend that the trial court was required to grant a new trial due to juror or bailiff misconduct. Allstate responds that the trial court did not abuse its discretion. Of course, a trial court has discretion when deciding a motion for new trial.[34]

 The record is insufficient for us to decide this issue. Although it shows that the trial court heard live testimony from both the allegedly offending bailiff and juror, it does not include a transcript that would allow us to discern the nature of that testimony. Nor does it contain the trial court's ruling, findings, or order. As a result, we have no way to know what the testimony was, whether the trial court found it credible, or why the trial court exercised its discretion to deny a new trial. The Hustons assert that "the reporter is unable to transcribe"[35] the testimony and that the record is "indecipherable,"[36] but the record does not show that they attempted to reconstruct the record in accordance with the Rules of Appellate Procedure,[37] that they asked the trial court to certify an agreed or narrative

---

[34] *State v. Jackson*, 150 Wn.2d 251, 276, 76 P.3d 217 (2003); *State v. Balisok*, 123 Wn.2d 114, 117, 866 P.2d 631 (1994), *cert. denied*, 536 U.S. 943 (2002); *State v. Tandecki*, 120 Wn. App. 303, 310, 84 P.3d 1262 (2004).

[35] Br. of Appellant at 31 n.40.

[36] Reply Br. of Appellant at 18 n.7.

[37] RAP 9.3 ("A narrative report of proceedings may be prepared if either the court reporter's notes or the videotape of the proceedings being reviewed are lost or damaged."); RAP 9.4 ("An agreed report of proceedings may be prepared if either the court reporter's notes or the videotape of the proceeding being reviewed are lost or damaged."); *State v. Tilton*, 149 Wn.2d 775, 781-82, 72 P.3d 735 (2003) ("The Washington Rules of Appellate Procedure . . . establish the procedure for reconstructing a record when the tape recording of the proceedings has been lost"; nonverbatim methods of reporting are "permissible if they permit effective review"; party seeking review must "prepare either a narrative report of proceedings under RAP 9.3 or an agreed report of proceedings under RAP 9.4, and file that with the trial court"; "[o]bjections and proposed amendments to either the narrative report or a verbatim report are filed with the trial court, and the trial

report in lieu of a verbatim one,[38] or even that they apprised the trial court of the problem. Lacking both a certified record of the testimony and any findings on whether the juror's allegations were credible, we cannot say that the trial court abused its discretion by denying a new trial.

## III

■ Relying on RCW 4.84.010, Allstate contends that the trial court was required to award its costs and statutory attorney fees. Under RCW 4.84.010, a trial court must generally allow costs and attorney fees "to the prevailing party." Here however, it was arguable that Allstate had not prevailed, given its failure to prove arson (the central issue at trial) and its failure to obtain reimbursement of the amounts it had paid before trial. The trial court reasoned that Allstate had not substantially prevailed, it had discretion to do that, and we find no error.

The remaining issues need not be reached or clearly lack merit. Neither side shall receive costs or fees on appeal.

Affirmed.

BRIDGEWATER and HUNT, JJ., concur.

Review denied at 153 Wn.2d 1021 (2005).

---

judge settles the objections and approves amendments as per RAP 9.5(c) and (d)."). *See State v. Jackson*, 87 Wn.2d 562, 565, 554 P.2d 1347 (1976) (" 'Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise.' ") (quoting *Draper v. Washington*, 372 U.S. 487, 495, 83 S. Ct. 774, 9 L. Ed. 2d 899 (1963)); *State v. Young*, 70 Wn. App. 528, 530, 856 P.2d 399 (1993) (record sufficient to permit review "does not necessarily mean a complete verbatim report of proceedings") (citing *Mayer v. City of Chicago*, 404 U.S. 189, 194, 92 S. Ct. 410, 414, 30 L. Ed. 2d 372 (1971)); *State v. Putman*, 61 Wn. App. 450, 454, 810 P.2d 977 (1991), *review denied*, 122 Wn.2d 1015 (1993). *Cf. State v. Brown*, 132 Wn.2d 529, 592, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998), in which the trial court "prepared from its notes . . . a Supplementation of Report of Proceeding" which "provided a record of sufficient completeness for adequate review."

[38] See the preceding footnote.